BROOKS, WATERFIELD & CO. *v.* N. LOVELACE & CO.

[Abstract Kentucky Law Reporter, Vol. 6—366.]

**Partnership Liability.**

Money borrowed by a person prior to the partnership between himself and another but which was borrowed for and used by the partnership and where at the date it was borrowed it was contemplated and understood between the parties that it should be used in building a partnership building, becomes a partnership liability, especially where the partners have treated it as such.

Allowance for Receiver.

In the absence of the complete evidence showing what services the receiver has rendered this court will not determine whether an allowance made to him by the trial court was erroneous.

APPEAL FROM GRANT CIRCUIT COURT.

November 25, 1884.

OPINION BY JUDGE PRYOR:

The first error complained of by the appellants is the allowance of the claims of Robbins and the appropriation by the Chancellor of the proceeds of the tobacco raised by Johns on the Tucker farm to the payment of the debt of Robbins. We can not well see how the lien was retained by the landlord Tucker for himself or Robbins, who was the surety for the rent. The tobacco had been removed from the farm for some months and was in the possession of Johns, and if not partnership property was liable in the distribution to the payment of the individual indebtedness of Johns. On this principle doubtless the Chancellor below allowed the claim of Robbins who did not pretend to be a partnership creditor, and although claiming a lien was entitled in equity against the partnership creditors to this individual fund in satisfaction of his debt. All the partnership estate had been, or was at the time distributed between the partnership creditors and the only party complaining here is the appellant who is a partnership creditor and therefore he is not injured by the manner in which the distribution of this fund was made. The second ground of complaint is that the court below improperly rejected the claim for $2,000 upon the ground that it was loaned to Lovelace prior to the partnership between the latter and Johns and therefore was the individual liability of Lovelace and not a partnership debt. On this question the proof conduces to show that the actual terms of the partnership had not been agreed on when the money was borrowed by Lovelace. But it was then contemplated and in fact understood between the parties that this tobacco warehouse should be erected and become partnership property. In fact it was built for that purpose and the money borrowed or the rent of it appropriated to paying for its construction. The fact in this case that makes this question conclusive and which fact is not controverted by Johns that after the lease had been made to the partners of the

ground upon which this warehouse was to be built, it was proposed to be assigned or in some way transferred by them to secure the appellants in the payment of the debt and both of them had executed the transfer that was in some manner defective, and the paper was taken back by Lovelace in order to remedy the objection that appellants had to it. It is a little remarkable that Johns would in connection with Lovelace transfer this lease or permit it to be done so as to make any claim of his subordinate to the individual debt of Lovelace, and for that reason we are satisfied they regarded it as a partnership liability and every equitable view of this case leads to such a conclusion, the Chancellor therefore erred in rejecting this claim.

As to the claim of $1,100, or about that amount, that was obtained from the gamblers by Lovelace it is plain that this was a part of the money that appellants had loaned the firm, and if not the identical money it was refunded to Lovelace as part of the money that had been won from him by the gamblers, the whole sum lost belonging to the firm, and besides the proof tends to show that the appellants regarded it in that light, and were properly chargeable with it, as that much received on their share of the distributable fund and as they were allowed interest should have paid interest, or the proper mode would have been to have credited it as of the date they received it, or so much of the fund as they were entitled to in the distribution. We perceive no reason however for complaint by either party as to this claim.

As to the allowance to the Receiver we are not prepared to say that it was improper or exorbitant. There was proof introduced as the record shows as to the nature and character of the services rendered and no bill of exceptions taken, and therefore this court is unable to arrive at any conclusion that would be proper in the absence of this proof. We do not find from the record that there was a large quantity of tobacco stripped, purged and sold and that it was under the control of the receiver for several months and from a partial record on this subject we would be inclined not to disturb the allowance.

There were many attachments issued in this case, forty or fifty, and perhaps more, the appellants being also attaching creditors. The appellants sought to bring the case within the state insolvent law, and it seems by consent or without resistance at least to the

prayer of the appellant it was adjudged that the whole proceeds of the partnership should enure to the benefit of creditors, and the appellants who are claiming now the right to have counsel fees paid stand in the attitude of other creditors who had employed attorneys also to present their claims. Brooks, Waterfield & Company are not the assignees or occupying a fiducial relation to these creditors, but on the contrary are litigating all the claims but their own and are in no position to have their counsel paid out of the trust fund. In other words the record before us shows one counsel as much entitled as the other and the Chancellor properly refused the claim for an allowance. On the cross appeal it may be assumed that Johns made the agreement with the appellants that no more money was to be sent to the firm by Lovelace by reason of the latter's dissipated habits (an assumption not warranted by the proof), and still we can not well see how the Chancellor can convert the appellants into trustees for the custody of the morals of Lovelace or hold them responsible for a mismanagement of the firm assets. Lovelace was in fact the solvent partner and the financial man of the concern, and although he had contracted bad habits, Johns, knowing his propensities in this way continued with him as a partner in active business and now proposes to hold these appellants responsible because he told them not to trust him. Johns should have protected himself as well as the appellants, by dissolving the partnership and refusing to do business longer with one whose dissipated habits has caused this loss to all these parties. He is more in default than the appellants and besides on the day this money or most of it was paid to Lovelace by the appellants Johns went with Lovelace to the firm of appellants and informed them that they (Lovelace and Johns) wanted so much money that evening and that he, Johns, would leave before they could obtain it. Lovelace was present and nothing was said at that time about sending the money by a third person, and when Lovelace called for it the money was handed over to him. There was no collusion with Lovelace and appellants to defraud Johns but the utmost good faith on the part of the appellants, except that Johns insists that when Lovelace called for the money he should have been told by the appellants that his co-partner had directed him not to send the money by him. He made no arrangement to send it by any one else, and left appellants to deal with a man that he now says he was not willing to

trust although he was then his partner, and the actual business partner of the firm and the only one whose financial condition was recognized as sound.  There is nothing in this claim or in this imaginary contract to defeat the recovery by the appellants.

The claim of $230 was properly allowed appellants.  They had advanced moneys to pay for this tobacco; had it in possession and were entitled to hold it or sell it to satisfy their demands.  It is not pretended that they sold it for less than its value, and having paid for it they were entitled to hold it until their money was refunded. It may have been paid for in the general advances made still this can make no difference.  The lien existed and while the title may have passed under the assignment, it having been sold, and no claim that it was sacrificed having been made, the appellants should be allowed to hold the proceeds.

We perceive no error in this case except as to the $2,000.  This should have been allowed as a partnership claim.

Judgment *reversed* and cause remanded for proceedings consistent with this opinoin.  Judgment *affirmed* on cross appeal.

*Hallam & Myers, for appellants.*
*Collins & Fenley, for appellees.*